ACCEPTED
03-14-00238-CR
4417774
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 11:33:06 AM
JEFFREY D. KYLE
CLERK

## No. 03-14-00238-CR

IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/9/2015 11:33:06 AM

JEFFREY D. KYLE
Clerk

### SHRIYA BIMAN PATEL, APPELLANT

### VS.

### THE STATE OF TEXAS, APPELLEE

APPEAL FROM THE 331ST DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-900230
HONORABLE JUDGE DAVID CRAIN PRESIDING

## STATE'S BRIEF

ROSEMARY LEHMBERG
DISTRICT ATTORNEY
TRAVIS COUNTY, TEXAS

M. SCOTT TALIAFERRO
TEXAS BAR NO. 00785584
ASSISTANT DISTRICT ATTORNEY
DIRECTOR, APPELLATE DIVISION
DISTRICT ATTORNEY'S OFFICE
P.O. BOX 1748
AUSTIN, TEXAS 78767
PHONE: 512.854.3626   FAX: 512.854.4810
EMAIL:  scott.taliaferro@traviscountytx.gov
       AND AppellateTCDA@traviscountytx.gov

### THE STATE DOES NOT REQUEST ORAL ARGUMENT

# TABLE OF CONTENTS

INDEX OF AUTHORITIES........................................................................................iii

STATEMENT OF THE CASE ...............................................................................2

STATEMENT REGARDING ORAL ARGUMENT....................................................3

STATEMENT OF FACTS ....................................................................................3

a.  Bimal Patel and the appellant……………………………………………. 3
b.  Fire in the apartment………………....……………………………………4
c.  The death of Bimal Patel…………………..………………………………6
d.  Investigation of the crime scene………………………………………..…7
e.  The cause of the fire…………………………………………………….....9

SUMMARY OF THE ARGUMENTS .....................................................................11

THE STATE'S REPLY TO THE FIRST POINT OF ERROR.................................13

   THE EVIDENCE IS LEGALLY SUFFICIENT TO ESTABLISH THAT THE APPELLANT ACTED
   WITH THE REQUISITE *MENS REA*..................................................................13

1.  Background……………………………………………………………...13
2.  Nature of the appellant's claim……………………………………………16
3.  Standard governing legal-sufficiency review……………………………...17
4.  Intent to "damage" the habitation……………………………………….20
   a.  The hypothetically correct jury charge would merely require an intent
       to damage the habitation……………………………………………20
   b.  The evidence is legally sufficient to establish that the appellant acted
       with intent to damage the habitation……………………………..…25
5.  Additional *mens rea* required by section 28.02(a)(2)……………………...31
   a.  The hypothetically correct jury charge……………………………...31
   b.  The evidence is legally sufficient to establish that the appellant knew
       that the habitation was located on property belonging to another..…32
   c.  The evidence is legally sufficient to establish that the appellant was
       reckless as to whether the burning would endanger life or
       property……………………………………………………………34
       i.   Typographical error………………………………………….34
       ii.  Evidence of the appellant's recklessness…………………….37
6.  The evidence is legally sufficient to support a conviction under Penal Code
    section 28.02(a-2)………………………………………………………38

i

7.      The evidence is legally sufficient to support a conviction under the law of parties…………………………………………………………………………...41

THE STATE'S REPLY TO THE SECOND POINT OF ERROR ............................ 43

THE TRIAL COURT DID NOT ERR BY INSTRUCTING THE JURY ON THE LAW OF PARTIES, AND ANY ERROR WAS HARMLESS. ........................................................................43

1.      The law of parties…………………………………………………………..43
2.      Background……………………………………………………………………...43
3.      Instructing the jury on the law of parties…………………………………..44
4.      Standard governing appellate review………………………………………45
5.      The trial court did not err by instructing the jury on the law of parties……46
      a.      The evidence is sufficient to support the alternative inference that the victim started the fire……………………..………………………46
      b.      The trial court could reasonably have found that the evidence was sufficient to support an inference that the victim committed arson as defined by Penal Code section 28.02(a)(2)……………….…………52
      c.      The trial court could reasonably have found that the evidence was sufficient to support an inference that the victim committed arson as defined by Penal Code section 28.02(a-2)………….………………54
      d.      The trial court could reasonably have concluded that the evidence was sufficient to support a verdict that the appellant was guilty as a party...................................................................................................56
6.      Any error was harmless because the evidence clearly supports the appellant's conviction as the principal actor……………………………….58

PRAYER .................................................................................................................... 63

CERTIFICATE OF COMPLIANCE.......................................................................... 64

CERTIFICATE OF SERVICE.................................................................................... 64

# INDEX OF AUTHORITIES

**Cases**

*Alvarado v. State*, 912 S.W.2d 199 (Tex. Crim. App. 1995)...................................19

*Anderson v. State*, 416 S.W.3d 884 (Tex. Crim. App. 2013) .................... 17, 21, 41

*Arroyo v. State*, 117 S.W.3d 795 (Tex. Crim. App. 2003) ......................................51

*Black v. State*, 723 S.W.2d 674 (Tex. Crim. App. 1986) .......................... 59, 60, 61

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011)..........................................34

*Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011)..........................................18

*Cadd v. State*, 587 S.W.2d 736 (Tex. Crim. App. 1979)..........................................24

*Cathey v. State*, 992 S.W.2d 460 (Tex. Crim. App. 1999) ......................................59

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)............................. 17, 19

*Colburn v. State*, 966 S.W.2d 511 (Tex. Crim. App. 1998) ....................................61

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000)..........................................18

*Daugherty v. State*, 387 S.W.3d 654 (Tex. Crim. App. 2013) ................................18

*Ex parte Thompson*, 179 S.W.3d 549 (Tex. Crim. App. 2005)....................... passim

*Fuller v. State*, 73 S.W.3d 250 (Tex. Crim. App. 2002)............................ 32, 34, 37

*Geick v. State*, 349 S.W.3d 542 (Tex. Crim. App. 2011) ........................................24

*Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013) .....................................45

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001)......................................18

*Gore v. State*, 332 S.W.3d 669 (Tex. App.—Eastland 2010)...................................35

*Grissam v. State*, 267 S.W.3d 39 (Tex. Crim. App. 2008) ............................... 21, 25

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004)......................................19

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). ........................................18

*In re B.P.S.*, No. 03-07-00284-CV, 2008 Tex. App. LEXIS 6028 (Tex. App.—
   Austin Aug. 6, 2008) ..........................................................................................36

*Jackson v. Virginia*, 43 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) .... 17, 19

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012) ....................................18

*Kenny v. State*, 292 S.W.3d 89 (Tex. App.—Houston [14th Dist.] 2007) .............22

*Kirsch v. State*, 306 S.W.3d 738 (Tex. Crim. App. 2010)......................................61

*Kuhn*, 393 S.W.3d 519 (Tex. App.—Austin 2013) ................................................45

*Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999) ..................................... passim

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). ......................... 17, 21, 25

*Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002).............................. 41, 43

*Martin v. State*, 541 S.W.2d 605 (Tex. Crim. App. 1976) ......................................36

*Miller v. State*, 83 S.W.3d 308 (Tex. App.—Austin 2002) ............................. 43, 46

*Moreno v. State*, 721 S.W.2d 295 (Tex. Crim. App. 1986)....................................19

*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988)....................................19

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013) ............................... 58, 61

*Ryser v. State*, No. 01-13-00634-CR, ___ S.W.3d ___, 2014 Tex. App. LEXIS 12711 (Tex. App.—Houston [1st Dist.] Nov. 25, 2014)......................................45

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991)......................................19

*State v. Stewart*, 282 S.W.3d 729 (Tex. App.—Austin 2009)................................51

*Swartz v. State*, 61 S.W.3d 781 (Tex. App.—Corpus Christi 2001) ................ 21, 39

*Swearingen v. State*, 270 S.W.3d 804 (Tex. App.—Austin 2008, pet. ref'd).........45

*Thomas v. State*, 621 S.W.2d 158 (Tex. Crim. App. 1981) (op. on reh'g)....... 24, 25

*Vasquez v. State*, 665 S.W.2d 484 (Tex. Crim. App. 1984) ...................................33

*Vega v. State*, 267 S.W.3d 912 (Tex. Crim. App. 2008) .........................................21

*Vogt v. State*, 421 S.W.3d 233 (Tex. App.—San Antonio 2013)............................59

*Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008) ....................................59

**Statutes**
Tex. Code Crim. Proc. art. 36.19 .......................................................................58

Tex. Code Crim. Proc. art. 38.04 .......................................................................19

Tex. Pen. Code § 19.03(a)(2)..............................................................................13

Tex. Pen. Code § 28.02 ................................................................................ passim

Tex. Pen. Code § 6.03(a) ................................................................... 26, 53, 55

Tex. Pen. Code § 6.03(c) .....................................................................................37

Tex. Pen. Code § 7.01(a) ............................................................................ 41, 43

Tex. Pen. Code § 7.02(a)(2)......................................................................... passim

IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

---

SHRIYA BIMAN PATEL, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

---

APPEAL FROM THE 331ST DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-900230
HONORABLE JUDGE DAVID CRAIN PRESIDING

---

## STATE'S BRIEF

---

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas, by and through the District Attorney **for** Travis County, respectfully submits this brief in response to that of the appellant, Shriya Patel.

1

## STATEMENT OF THE CASE

In this case, the appellant appeals from her conviction of offense of arson causing death, a first-degree felony. *See* Tex. Pen. Code sec. 28.02(d)(1).

The appellant was a charged by a three-count indictment with committing the offenses of capital murder (Count I) and murder (Counts II and III).[1] The State elected not to proceed on Counts II and III. CR 143; *see* 6 RR 106-07.[2]

On March 4, 2014, a jury was sworn, and trial on the merits commenced. 6 RR 105. On March 10, 2014, the jury found the appellant not guilty of capital murder but guilty of the lesser-included offense of arson causing death. 10 RR 10; CR 130.

On March 10, 2014, the punishment phase of the trial commenced. 10 RR 14. On March 11, 2014, the jury returned its punishment verdict, assessing the appellant's punishment at imprisonment for a term of 20 years. 11 RR 5; CR 141. That sentence was imposed by the trial court that same day. 11 RR 7.

The appellant's notice of appeal was filed on March 25, 2014. CR 145. The trial court has certified that the appellant has the right to appeal. CR 149.

---

[1] All three counts alleged, *inter alia*, the murder of the same individual, i.e., the appellant's husband, Bimal Patel.

[2] A citation in the form of "*x* CR *y*" refers to page *y* of volume *x* of the Clerk's Record. A citation in the form of "*x* RR *y*" refers to page *y* of volume *x* of the Reporter's Record.

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues, facts, legal authorities, and arguments pertinent to the instant appeal are adequately addressed in the briefs submitted by the parties, the State respectfully asserts that the Court's decisional process would not be significantly aided by oral arguments. Accordingly, the State does not request oral argument.

## STATEMENT OF FACTS

The appellant's arson conviction arose from an incident that occurred on April 17, 2012. During that incident, a fire ignited inside of the home that the appellant shared with her husband, Bimal Patel, who later died from injuries that he sustained during the fire.

a. Bimal Patel and the appellant

Bimal Patel ("Bimal") grew up in Texas, graduated from Texas Tech University, and "was as American as it gets." 6 RR 200; *see id.* at 198; 7 RR 11. At some point, approximately a year or so" before the incident, Bimal traveled to India for a wedding. While there, he met the appellant, and they married each other shortly thereafter. *See* 7 RR 14-16, 21. Bimal returned to Austin, but the appellant did not join him at that time. *See* 7 RR 16. Bimal really loved the appellant. 7 RR 91. He was eager for her to come to the United States. 6 RR 201.

3

In July 2011, Bimal leased Apartment 223 at the Camden Huntingdon apartment complex on Metric Boulevard. 6 RR 122, 147; State's Exh. 163. Sometime during the days or weeks before the incident, the appellant moved from India to the United States and began residing in the apartment with Bimal. *See* Def. Exh. 22 at 3, 6.

b. Fire in the apartment

Shortly after 8:00 a.m. on the day of the incident, the appellant purchased several items from a Wal-Mart store, including painter's tape and two candles. 7 RR 49, 60, 144; State's Exh. 48. The appellant then traveled by cab from the Wal-Mart store to a gas station. 7 RR 152-54. There, she purchased a gas can and put some gasoline into it. 6 RR 194-96; 7 RR 155. The appellant got back inside of the cab, which drove her by a nearby police station and then dropped her off at the apartment complex. 7 RR 156.

Later that evening, an off-duty sheriff's deputy who resided in the apartment complex was walking his dog when he heard a man screaming, "Please help me. My wife set me on fire." 6 RR 123; *see id.* at 124. The deputy approached the site of the commotion and saw the man, Bimal Patel, standing outside of Bimal's apartment. Bimal was naked, with smoke coming off of him and skin hanging off of his body. After hurriedly putting the dog away, the deputy called 911 and

4

returned to Bimal's location. 6 RR 123-24. The deputy noticed that the area outside of Bimal's apartment "smelled really, really strong of gasoline." 6 RR 125.

Attempting to assist Bimal, the deputy opened the door to the apartment. Standing just inside of the door was the appellant, who was holding her purse behind her back. 6 RR 127. At that time, the appellant stated, "I need to go." 6 RR 128. The appellant was not screaming but instead seemed pretty calm. 6 RR 129.

When the first Austin Police Department officer arrived at the scene, the appellant and the off-duty sheriff's deputy were standing outside of the apartment, and Bimal was lying on the floor of the apartment, on his back with his arms extended out. 8 RR 61-62, 68-69; *see, e.g.*, State's Exh. 4. Bimal was conscious and had a conversation with the APD officer. 8 RR 69. One of the things that Bimal indicated to that officer was that the appellant had tricked him to some extent. 8 RR 72. When paramedics arrived, Bimal was still screaming in pain and asking, "Why? Why would she do this? Why? Why did this happen? Why has this had to happen?" 7 RR 192. In the ambulance, Bimal continued to scream, and he was given some pain medicine. 7 RR 194-95.

5

c. The death of Bimal Patel

Bimal was transported by ambulance to the emergency room at the North Austin Medical Center. He was critically ill at that time. 7 RR 171. He kept screaming in pain and at one point said, "Why would anyone do this to me? Why would she do this to me?" 7 RR 175. While he was at that hospital, a breathing tube was inserted into his airway. *See* 7 RR 172-74. Bimal was then transported, via STAR Flight helicopter, to Brooke Army Medical Center in San Antonio, arriving there on April 18, 2012. 6 RR 159-61; 7 RR 196. When admitted, he had third-degree burns on approximately 77 percent of his body, and he also had smoke inhalation injury. 6 RR 160, 162. While at the Brook Army Medical Center, Bimal underwent 17 different surgical operations that involved general anesthesia. 6 RR 164. His treatment there included numerous skin grafts and the amputation of all of his fingers and one toe. 6 RR 164, 176, 182; 7 RR 130.

Bimal Patel died at Brooke Army Medical Center on September 8, 2012. 6 RR 170. An autopsy was performed by the Bexar County Medical Examiner's Office. 7 RR 119. The medical examiner determined that the manner of death was homicide and that Bimal died as a result of complications from injuries sustained in a fire. 7 RR 123.

d. Investigation of the crime scene

When Austin Fire Department investigators arrived at Bimal's apartment on the day of the incident, it was evident that there had been a fire in the apartment. There was a light haze inside of the apartment as well as a very pungent odor of gasoline and smoke. 7 RR 224. The investigators were initially unable to open the door to the bathroom. The top of the door was closed and stuck in place, but the part below the level of the knob appeared to have been the kicked or punched open. 7 RR 225; *see, e.g.*, State's Exh. 18. When the investigators forced the bathroom door, they were hit with still more smoke and gasoline fumes. 7 RR 224. For safety reasons, the investigators vacated the premises until the fumes dissipated somewhat. 7 RR 69, 224. The investigation resumed after about five minutes. 7 RR 226.

Investigators found large pieces of skin inside and outside of the apartment. 7 RR 215, 218; *see, e.g.,* State's Exh. 26, 45. They determined that the fire originated in the bathroom. 7 RR 228. A candle was found at the bottom of the bathtub. 7 R 72. Another candle was found on the bathroom counter. 7 RR 232. A lighter was found in the bathroom, on the counter. 7 RR 72.

The appellant's gas can was found inside of the apartment, in a closet near the front door. 7 RR 39-41. The door to that closet was ajar when investigators

7

arrived. 7 RR 219. Scientific analysis revealed the presence of gasoline in the gas can. 7 RR 97, 110. However, the gas can appeared to be empty except for fumes. 7 RR 71.

In the hallway adjacent to the bathroom, investigators found a white bucket, which contained a small amount of gasoline. 7 RR 98, 111, 217. Standing upright inside of the bucket was a plastic drinking cup that contained gasoline residue. 7 RR 39-41, 71, 217. A towel soaked with gasoline was found on the floor near that bucket. 7 RR 42, 220. Also inside of the residence were two pairs of boxer shorts that were soaked with gasoline. 7 RR 45.

Investigators found that three separate pieces of fire-protection equipment in the apartment had been tampered with. 7 RR 215. Specifically, in the hallway adjacent to the bathroom, a hard-wired smoke detector had been removed from the ceiling. That smoke detector was found in the dining room, under the kitchen counter. 7 RR 44, 214; *see* State's Exhibit 71. In that same hallway, a sprinkler had been completely covered up with tape and a piece of cloth. 7 RR 214-15. Clear plastic had been taped around the heat-sensitive sensor of that sprinkler head. 7 RR 67. Investigators also found that the sprinkler in the bathroom had been tampered with. The sprinkler head was found to be completely wrapped in blue painter's tape. 7 RR 234. In addition, that entire sprinkler head appeared to have

8

been covered up with plastic and cloth, both of which apparently melted in the fire and fell to the floor. 7 RR 235. The cloth covering both sprinkler heads appeared to have been cut from the same scarf. 7 RR 67-68.

The appellant's fingerprints were found on the gas can, on the white bucket, and also on the items that were used to cover the sprinklers. 8 RR 129-37; *see id.* at 104, 119.

e.  The cause of the fire

At trial, the State presented expert testimony from Captain Andrew Reardon of the Austin Fire Department, who concluded that the appellant ignited a flash fire when she used the plastic cup to throw gasoline into the bathroom while a candle was burning on the edge of the tub, a second candle was burning on the bathroom counter, and Bimal Patel was lying in the bathtub. *See* 8 RR 11. Reardon concluded that Bimal was taken completely by surprise. 8 RR 47. Captain Reardon explained his conclusion regarding the ignition sequence:

> So by throwing that gasoline in there, liquid gasoline, it basically vaporized, or atomized it, like it does in a car engine…. So those small droplets, with a very large surface area, found the ignition source, the candle right there on the edge of the bathtub. From there, what happened is all those vapors -- it's a very vapor-rich environment. That caused an intense flash fire that spread at the level of the bathtub, across the bathtub, and then went up across the wall, and then spread over the ceiling and down the other wall.

8 RR 20-21.

Captain Reardon explained that it was possible for the appellant to have thrown the gasoline into the bathroom and escaped completely unscathed, with no singed hair and no gasoline on her. 8 RR 12-13. Reardon opined that the gasoline thrown into the bathroom was sufficient to cause all of the victim's burns and all of the damage to the apartment. 8 RR 41. Reardon concluded that all of the gasoline thrown into the bathroom was completely consumed by the fire. 8 RR 43.

Captain Reardon also ruled out the possibility that Bimal ignited the fire. Reardon explained that the burn patterns in the bathroom and on Bimal's body indicate that "he was laying in the tub with his head at the far end, his feet at the faucet end" when the flash fire occurred. 8 RR 19-20. Reardon pointed out that, if Bimal had used the cup to pour gasoline on himself while in the bathtub, the cup "would never have made it back to the white bucket." 8 RR 52.

Captain Reardon also noted that meat was found thawing in Bimal's kitchen. Reardon explained, "I just don't see somebody that was intending to kill themselves to thaw meat." 8 RR 51. He acknowledged, however, that he did not know who put the meat there. 8 RR 53. Captain Reardon also ruled out the possibility that massage oil played a role in this incident. 8 RR 21-22.

10

## SUMMARY OF THE ARGUMENTS

1. Reply to the first point of error

In her first point of error, the appellant challenges the sufficiency of the evidence to support her conviction for arson, an offense defined by Penal Code section 28.02. That provision defines the offense of arson in multiple ways. In this case, the sufficiency of the evidence must be assessed in relation to a hypothetically correct jury charge that would authorize a conviction under either of two theories, i.e. subsections (a) and (a-2) of section 28.02.

The appellant does not address the sufficiency of the evidence to prove the commission of arson as defined by subsection (a-2) of section 28.02. Tex. Pen. Code § 28.02(a-2). Her claim focuses on subsection (a), and there are two aspects to that claim. First, the appellant argues that the evidence is insufficient to establish that she acted with intent to "destroy" the habitation. *Id.,* § 28.02(a). That argument lacks merit because the evidence supports an inference that she acted with intent to "damage" the habitation, which is all that the hypothetically correct jury charge requires in that regard. *Id*.

Second, the appellant argues that the evidence is insufficient to prove that she acted with any of the additional mental state required by section 28.02(a)(2). That argument lacks merit because the evidence supports an inference that the

11

appellant knew that the apartment was located on property belonging to another and also an inference that she was reckless as to whether the burning would endanger life or property. *Id.*, § 28.02(a)(2)(D) and (F).

Because the evidence is legally sufficient, under both subsections (a) and (a-2) of section 28.02, to support the appellant's conviction, the first point of error should be overruled.

2. Reply to the second point of error

In her second point of error, the appellant asserts that the trial court erred by instructing the jury on the law of parties. The essence of the appellant's argument is that she could not be guilty as a party because "there is no evidence that Bimal Patel took any part in setting the fire." App. Br. 20. That argument must fail because the evidence supports an inference that, if the appellant did not cause the fire to ignite, then that fire was started by Bimal Patel. In light of that inference, the trial court could reasonably have concluded that there was evidence sufficient to support a jury verdict that the defendant is criminally responsible under the law of parties. Moreover, any error was harmless because the evidence clearly supports the appellant's conviction as the principal actor.

12

## THE STATE'S REPLY TO THE FIRST POINT OF ERROR

THE EVIDENCE IS LEGALLY SUFFICIENT TO ESTABLISH THAT THE APPELLANT ACTED WITH THE REQUISITE *MENS REA*.

### Argument and Authorities

In her first point of error, the appellant asserts, "The evidence is insufficient to prove arson because it does not support a finding beyond a reasonable doubt on specific intent to destroy the habitation nor any of the three knowledge elements necessary under the charge as given." App. Br. 2. That claim should be overruled for the reasons that follow.

1. Background

Count I of the indictment charged the appellant with committing the offense of capital murder. *See* CR 5. That charge alleged, *inter alia*, that the appellant "did then and there intentionally cause the death of an individual, namely, Bimal Patel, by causing gasoline and gasoline vapors to ignite by placing gasoline on Bimal Patel and by introducing gasoline into a room occupied by Bimal Patel and where a candle was burning, and the defendant was then and there in the course of committing or attempting to commit the offense of Arson of a habitation of Bimal Patel…" CR 5 (emphasis added). *See* Tex. Pen. Code § 19.03(a)(2).

The State requested that the jury be instructed on the lesser-included offense of arson. 9 RR 65; *see* Tex. Pen. Code § 28.02. Defense counsel objected. 9 RR

13

66-67. The trial court overruled the objection and granted the State's request. 9 RR 77. The instructions relating to the offense of arson were predicated upon Penal Code section 28.02(a)(2), which provides, in pertinent part, as follows:

> § 28.02. Arson
> (a) A person commits an offense if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion **with intent to destroy or damage**:
>    ***
>    (2) any building, habitation, or vehicle:
>      (A) knowing that it is within the limits of an incorporated city or town;
>        ***
>      (D) knowing that it is located on property belonging to another;
>        *** or
>      (F) when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

Tex. Pen. Code § 28.02(a)(2)(A), (D), and (F) (emphasis added).

Addressing the offenses of arson and capital murder in the abstract, Paragraph I of the jury charge provided as follows:

> I.
> A person commits the offense of Capital Murder if she intentionally causes the death of an individual in the course of committing or attempting to commit the offense of Arson.
> A person commits Arson if she starts a fire, regardless of whether the fire continues after ignition, or causes an explosion **with intent to destroy or damage** any habitation:
> knowing that it is within the limits of an incorporated city or town or
> knowing that it is located on property belonging to another or

14

when the person is reckless about whether the burning or explosion will endanger the life of some individual

CR 125 (emphasis added).

The application paragraph pertaining to the offense of arson instructed the jury as follows:

VI.
Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Shriya Biman Patel, on or about the 17th day of April, 2012 in the County of Travis and State of Texas, did then and there start a fire, regardless of whether the fire continued after ignition, or caused an explosion **with intent to destroy** a habitation occupied by Bimal Patel

knowing that it was within the limits of an incorporated city, to wit: Austin, Texas and/or
knowing that it was located on property belonging to another, to wit: Camden Huntington and/or
Shriya Biman Patel was reckless in so doing by consciously disregarding the risk that the fire would endanger the life of **Biman** Patel

And the said Shriya Biman Patel by reason of the commission of said offense did thereby cause death to be suffered by Biman Patel, you will find the defendant guilty of Arson and so say by your verdict, but if you do not so believe or if you have a reasonable doubt thereof, you will find the defendant not guilty of the offense of Arson and so say by your verdict.

CR 126 (emphasis added).

15

2. Nature of the appellant's claim

The appellant challenges the sufficiency of the evidence to establish that she acted with the *mens rea* required by the statute defining the offense of arson. *See* Tex. Pen. Code § 28.02. There are two aspects to that claim. First, the appellant argues that, while arson may in theory be committed "with intent to destroy or damage" a habitation (*id.,* sec. 28.02(a)), the application paragraph in this case did not include the phrase "or damage" and therefore authorized a conviction for arson only if the evidence established that the appellant acted "with intent to destroy" the habitation. *See* App. Br. 8-9; CR 126, Para. VI. Thus, the appellant contends that the evidence is legally insufficient to establish that she acted with the specific intent required by Texas Penal Code section 28.02(a).

Second, the appellant argues that the evidence is legally insufficient to establish that she acted with the knowledge or recklessness that is also required by Penal Code section 28.02(a). Specifically, she argues that the evidence is insufficient to establish that she acted with the intent required by section 28.02(a)(2), i.e., that she knew that the habitation was located within Austin city limits, that she knew that the habitation was located on property belonging to another, or that she was reckless about whether her conduct would endanger the

16

life of the victim. *See* App. Br. 11-17, Tex. Pen. Code sec. 28.02(a)(2)(A), (D), and (F).

  3.  Standard governing legal-sufficiency review

When assessing the legal sufficiency of the evidence to support a conviction, an appellate court is required to apply the *Jackson v. Virginia* standard. Under that standard, the reviewing court must consider all of the evidence in the light most favorable to the verdict and then determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 43 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

For purposes of a sufficiency analysis, the elements of an offense are defined by reference to a hypothetically correct jury charge. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik,* 953 S.W.2d at 240.

"The law as 'authorized by the indictment' includes the statutory elements of the offense 'as modified by the charging instrument.'" *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013), quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Thus, when the indictment alleges a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pled, not by the alternative statutory elements. *Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011). However, the hypothetically correct jury charge need not incorporate factual allegations that give rise to immaterial variances. *Id.*; *see Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). A variance occurs when there is a discrepancy between the charging instrument and proof at trial. *Gollihar* at 256; *see generally Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012) (addressing materiality of variances).

The task of the appellate court is to "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). The appellate court is required to presume that the factfinder resolved any conflicting inferences in favor of the

18

prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The jury is the exclusive judge of the facts proved, the weight to be given to the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. art. 38.04; *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final due-process safeguard that ensures only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or weigh the evidence. *Id*. The jury's verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence, with such evidence being viewed in the light of *Jackson*. *Id*.

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal,

the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

4. Intent to "damage" the habitation

The evidence was legally sufficient to establish that the appellant acted with intent to damage the habitation.

    a. The hypothetically correct jury charge would merely require an intent to damage the habitation

To commit the offense of arson, a person must act, *inter alia*, with intent to "destroy or damage" the property at issue. Tex. Pen. Code § 28.02(a). The application paragraph contains the phrase "intent to destroy" but makes no reference to an intent to "damage" the property. CR 125, π VI. The appellant claims that the record fails to "show beyond a reasonable doubt that appellant started the fire with the specific intent to 'destroy' the habitation" and that the evidence is therefore insufficient. App. Br. 8, *see id.* at 7-10.

That claim lacks merit. "While indeed a conviction cannot be affirmed on legal and factual grounds not submitted to a jury, when an indictment has been presented that authorizes conviction on a particular ground and facts have been presented to a jury that are sufficient to convict on that ground, it is not necessary that the jury charge itself have specifically stated that ground in order for a conviction to be affirmed." *Swartz v. State*, 61 S.W.3d 781, 786 (Tex. App.—

20

Corpus Christi 2001). In *Swartz*, the court explained, "The *Malik* court itself anticipated the review of theories that were raised by the evidence, but not charged in the jury charge, or even the indictment, where such theories are permitted by law and authorized by the indictment." *Swartz*, 61 S.W.3d at 786, citing *Malik*, 953 S.W.2d at 239.

Recent rulings of the Court of Criminal Appeals clearly reflect that the failure to include a theory in the application paragraph does not, without more, result in the exclusion of that theory from the hypothetically correct jury charge. *See, e.g., Anderson*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (holding that hypothetically correct jury charge would have included the conspiracy theory of the law of parties even though that theory was not set forth in the application paragraph); *Grissam v. State*, 267 S.W.3d 39, 41 (Tex. Crim. App. 2008) ("[B]oth theories of burglary were in the charge, although only one was in the application paragraph. The legal sufficiency of the evidence should have been measured against the requirements for conviction under either theory of burglary."); *Vega v. State*, 267 S.W.3d 912, 915 (Tex. Crim. App. 2008) ("it is irrelevant in a sufficiency review that the application paragraph of the charge actually given erroneously applied only the law of parties under § 7.02(a)(2).… Thus, the court of appeals was required to deem the evidence factually sufficient to support

21

appellant's conviction for capital murder if the evidence was factually sufficient under either theory of party liability.").

This rule applies to sufficiency review in cases where the defendant was convicted of a lesser-included offense. *See Kenny v. State*, 292 S.W.3d 89, 98 (Tex. App.—Houston [14th Dist.] 2007) ("because the aggravated kidnapping indictment is not restricted to either manner of abduction under section 20.01(2), we conclude the hypothetically correct jury charge would authorize conviction for the lesser-included offense of kidnapping under either theory of abduction," even though "the application paragraph of the court's charge on kidnapping expressly limits the manner of abduction to 'secreting' under section 20.01(2)(A))").

The appellant places great weight on the fact that the State submitted a proposed jury instruction. She argues, *inter alia*, that "evidentiary sufficiency should be judged by the factual averments in the paragraph drafted and submitted by the State. Stated differently, the State was bound to prove what they requested the jury to decide." App. Br. 7.; *see also id*. at 5, citing 9 RR 65-66.

The appellant's argument, however, is not supported the record or by any binding legal authority. First, although the record does reflect that the State "request[ed] an arson charge" and "submitted a draft of that to the Court," the content of the State's proposed instruction cannot be discerned from the appellate

22

record. 9 RR 65. In other words, the appellant has not established that the "intent to damage" language was absent from the State's proposed instruction, which is not included in the clerk's record.

Even if it is assumed, *arguendo*, that the court reporter attempted to incorporate the State's proposed instruction into the charge of the court,[3] the reporter's record reflects that a preliminary version of the court's charge included an arson instruction and that the preliminary version contained some typographical errors. *See* 9 RR 72 (where defense counsel, referring to that preliminary version, states, "Your Honor, I have received a copy. I understand that there's been a few typos. We're going to get an official copy, but I am prepared to make my argument with the copy that I have been given."). It is conceivable that the "intent to damage" language was included in the State's proposed instruction and that such language was somehow omitted from the court's charge and was therefore among the "typos" to which the appellant's trial counsel referred.

Second, even if the State's proposed instruction did omit the "intent to damage" language, Texas law does not support the appellant's argument "that the State was bound to prove what they requested the jury to decide." App. Br. 7. As support for her argument, the appellant relies primarily upon two cases that are not,

---

[3] The record indicates that a copy of the State's proposed instruction was given to the court reporter. 9 RR 65.

23

in fact, supportive.  *See* App. Br. 5, 7, citing *Thomas v. State*, 621 S.W.2d 158, 165 (Tex. Crim. App. 1981) (op. on reh'g); *Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011).

The *Thomas* ruling, which was handed down long before the Court of Criminal Appeals embraced the concept of a hypothetically correct jury charge, merely addresses the well-settled concept of invited error.  *See Thomas*, 621 S.W.2d at 165 ("appellant may not now complain of possible prejudicial effects from a charge he himself requested"), citing *Cadd v. State*, 587 S.W.2d 736, 741 (Tex. Crim. App. 1979) ("We have held many times that an accused cannot invite error and then complain thereof").  The principle of invited error is inapplicable to the appellant's claim in this case because the State is not asserting, in this appeal, that the trial court erred by charging the jury on the lesser included offense of arson.  Instead, it is the appellant who initiated this appeal, and indeed the trial court's decision to give the instruction is not even challenged here by the appellant.

The *Geick* ruling is likewise inapposite, as it merely supports the proposition that, if the State, when drafting an indictment, unnecessarily chooses between statutory alternatives, it must prove what it pled.  *Geick*, 349 S.W.3d 542, 547.  There, the court held, "When the State unnecessarily pleads a statutory definition that narrows the manner and means in which an offense may be committed, that

24

definition is 'the law as authorized by the indictment' and thus the allegation must be proved beyond a reasonable doubt." *Id.* at 848. That legal proposition does not support the appellant's claim because the offense of arson was not alleged in the indictment as a separate count; it was a lesser included offense. As the appellant correctly points out, "because the indictment was for capital murder, the State was not required to specify the type of arson it intended to prove." App. Br. xvi; *see Ex parte Watson*, 306 S.W.3d 259, 271 (Tex. Crim. App. 2009).

More to the point, the appellant's claim is that the statutory theories were narrowed, not by the indictment, but by the State's proposed charge. Nothing in *Thomas* or in *Geick* or in any of the other authorities cited by the appellant suggests that a hypothetically correct jury charge is shaped in some way by the fact that the State requested a particular jury instruction.

Further, the appellant's argument is clearly at odds with the very purpose of the hypothetically correct jury charge. As the Court of Criminal Appeals made clear in its seminal *Malik* opinion, "the standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Malik*, 953 S.W.2d 234, 240; see also *Grissam*, 267 S.W.3d 39, 40 ("The legal sufficiency of evidence is measured against the requirements for

25

conviction in a correct charge of the court (as distinguished from the charge that actually was given)") (parenthetical language in original).  Because the content of hypothetically correct jury charge is not based upon that of the actual jury charge, the mere *request* by the State for a particular jury instruction should not be considered by an appellate court when assessing the sufficiency of the evidence.

Thus, the hypothetically correct jury charge in the instant case would authorize a conviction for arson if the evidence establishes, among other things, that the appellant acted with intent to damage the habitation.

b. <u>The evidence is legally sufficient to establish that the appellant acted with intent to damage the habitation</u>

The evidence presented at trial is legally sufficient to support an inference that the appellant acted with intent to "damage" the apartment.  "A person acts intentionally, or with intent, with respect to … a result of his conduct when it is his conscious objective or desire to … cause the result."  Tex. Penal Code § 6.03(a).

As a starting point, it should be observed that the evidence, viewed in the requisite light, is clearly sufficient to establish that the appellant was the person who ignited the fire.  Robert Stanford, an off-duty sheriff's deputy who happened to reside in the same apartment complex as Bimal and the appellant, was walking his dog when he heard Bimal screaming, "Please help me.  <u>My wife set me on fire</u>."  6 RR 123 (emphasis added); *see id*. at 124.

26

After Bimal went back inside of the apartment and laid on the floor in pain, he indicated to an APD officer that the appellant had "kind of tricked" him to some extent. 8 RR 72. When paramedics arrived, Bimal was still screaming in pain and asking, "Why? Why would she do this? Why? Why did this happen? Why has this had to happen?" 7 RR 192. At the North Austin Medical Center, Bimal kept screaming in pain and at one point said, "Why would anyone do this to me? Why would she do this to me?" 7 RR 175.

The appellant's behavior at the scene is consistent with the claim that she started the fire. In particular, the record supports the inference that the appellant was in the process of leaving the apartment—and not rendering assistance to her badly burned husband—when the off-duty deputy arrived at the scene. When the deputy opened the door to the apartment to escort Bimal back inside, the deputy saw the appellant standing at the door, holding her purse behind her back. 6 RR 127. At that time, the appellant stated, "I need to go." 6 RR 128. She was not screaming but instead seemed pretty calm. 6 RR 129.

Additionally, Bimal's version of events was corroborated by the fact that the appellant's fingerprints were found, not only on the gas can that she purchased that morning (referred to as Item 5 and State's Exh. 113), but also on the white bucket (Item 25 and State's Exh. 117) that investigators found just outside of the

27

bathroom. 8 RR 129-30; *see id.* at 104. Inside of the bucket was a small amount of gasoline and the cup that, according to testimony from an arson investigator, was used by the appellant to hurl gasoline into the bathroom. 7 RR 39-41, 71, 217; 8 RR 11. Thus, when viewed in the light most favorable to the verdict, the evidence clearly suffices to establish that the fire was ignited by the appellant.

At trial, it is undisputed that, on the day of the fire, the appellant purchased the items that were later used to cover the sprinklers and to cause the fire. *See* 6 RR 118 (opening statement of defense counsel); 9 RR 102 (closing argument of defense counsel). Specifically, the evidence established that, shortly after 8:00 a.m. on the morning of the fire, the appellant purchased several items from a Wal-Mart store, including painter's tape and two candles. See 7 RR 49, 60; State's Exh. 48. During that same outing, she stopped at a Speedy Stop convenience store, where she purchased a gas can and put some gasoline into the gas can. 6 RR 194-96; 7 RR 155.

Significantly, this evidence, along with evidence that the appellant personally attempted to disable the fire-protection equipment in the apartment, supports an inference that the appellant acted pursuant to a preexisting plan or scheme that entailed damaging the residence. The appellant's fingerprints were found on the items (contained State's Exh. 143, also referred to as Item 24) that

28

were used to cover the sprinkler heads. 8 RR 130-37; *see id.* at 119. Perhaps most telling is the fact that her fingerprint was even found on the *adhesive* side of a piece of tape (described as Item 45.32 of Lab Item 24) that had been used to cover a sprinkler. *See* 8 RR 135. The jury could reasonably have inferred that the appellant would have touched the adhesive side of the tape only when using it to cover the sprinkler, not during the process of purchasing the tape and transporting it to the apartment. In other words, the evidence is legally sufficient to establish that the appellant *personally* handled that piece of tape when the sprinkler was being covered.

Why, before starting the fire, did the appellant tamper with the smoke detector and the sprinklers? The jury could reasonably have found that she did so in order to prevent the smoke detector from announcing the presence of smoke and, more significantly, to prevent the sprinklers from extinguishing an actual fire. Her conduct in disabling the smoke detector and covering the sprinklers supports the further inference that she intended to thereafter engage in conduct that would cause the bathroom to be filled with fire and smoke in amounts sufficient to potentially activate those devices. At trial, Captain Reardon of the Austin Fire Department testified to his belief that, when igniting the fire, the appellant acted with an intent that it spread into the hallway, "given the fact that the sprinkler

29

outside the hallway was taped up, in addition to a sprinkler inside the bathroom was taped up, and the fact that the smoke detector was removed from its proper mounting position and placed outside of the kitchen." 7 RR 229.

Importantly, "[i]t is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts." *Ex parte Thompson*, 179 S.W.3d 549, 556 n18 (Tex. Crim. App. 2005). Just as "the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill" (*Thompson* at 556 n18), so too does the act of igniting gasoline in a small bathroom suggest the existence of an intent to damage that bathroom. Such damage was the natural consequence of that conduct.

Here, it is undisputed that the bathroom was in fact damaged by the fire. The bathroom door was melted shut at the top, there was soot on the bathroom walls, and numerous plastic items had been melted by the high heat. *See, e.g.*, 8 RR 42 (testimony that the fire was "of such intensity that it literally glued the door to the door frame"). The damage to the bathroom included the melting of a plastic vent cover (7 RR 237; State's Exh. 34, 35), the melting of the plastic cover of a phone jack (7 RR 238; State's Exh. 36, 37), and the melting of a plastic towel rod (8 RR 14, 16).

30

Thus, the jury "was entitled to conclude that [the appellant] intended precisely what occurred." *Thompson*, 179 S.W.3d at 556. Viewing all of the evidence in the requisite light, this Court should find the evidence legally sufficient to establish that the appellant acted with intent to "damage" the habitation.

5. Additional *mens rea* required by section 28.02(a)(2)

The evidence was legally sufficient to establish that the appellant acted with a mental state required by section 28.02(a)(2).

a. The hypothetically correct jury charge

To commit the offense of arson as defined by Penal Code section 28.02(a), a person must act not only "with intent to destroy or damage" the property, but also with additional knowledge or recklessness required by one or more of the subsections that comprise section 28.02(a)(2). *See* Tex. Pen. Code § 28.02(a)(2)(A)-(F). The application paragraph was predicated upon three of the subsections, authorizing a conviction if the jury found, among other things, that the appellant acted while:

> **knowing** that it [i.e., the habitation occupied by Bimal Patel] was within the limits of an incorporated city, to wit: Austin, Texas and/or

> **knowing** that it was located on property belonging to another, to wit: Camden Huntington and/or

Shriya Biman Patel was **reckless** in so doing by consciously disregarding the risk that the fire would endanger the life of Biman Patel

CR 126, π VI (emphasis added); Tex. Pen. Code § 28.02(a)(2)(A), (D), and (F).[4]

"The victim's name is not a statutory element of the offense." *Fuller v. State*, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002). That name therefore would not be included in the hypothetically correct jury charge. Thus, the hypothetically correct jury charge would permit a conviction if, *inter alia*, the appellant acted (a) with knowledge that the habitation was "within the limits of an incorporated city or town," (b) with knowledge that the habitation was "located on property belonging to another," and/or (c) with recklessness about whether the burning or explosion would "endanger the life of some individual or the safety of the property of another." Tex. Pen. Code § 28.02(a)(2)(A), (D), and (F).

b. The evidence is legally sufficient to establish that the appellant knew that the habitation was located on property belonging to another

The evidence is legally sufficient, under section 28.02(a)(2)(D), to establish that the appellant acted with knowledge that the habitation was "located on

---

[4] In light of the allegations set forth in Count I of the indictment, an offense under each of those three subsections was properly deemed to constitute a lesser-included offense. *See* CR 5. "An offense is a lesser-included offense of another offense … if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009).

property belonging to another." Tex. Pen. Code § 28.02(a)(2) (D). "To prove a habitation is located on property belonging to another for purposes of V.T.C.A. Penal Code, Section 28.02, the state need only show the alleged 'owner' had title, possession, or a greater right to possess the property than did the accused." *Vasquez v. State*, 665 S.W.2d 484, 486 (Tex. Crim. App. 1984).

Here, the jury received a copy of the lease agreement between the appellant and the owner of the Camden Huntingdon Community, by and through its managing agent, Camden Development, Inc. *See* State's Exh. 163; 8 RR 142-43. The jury also received the apartment owner's ledger of payments received from the Bimal. *See* Def. Exh. 23. Moreover, because the appellant resided in the apartment with Bimal for several days before the incident, the jury could reasonably have concluded that Bimal's "meager … at best" (6 RR 202) financial situation was readily apparent to the appellant and that she must have known that Bimal was not the owner of the apartment complex or of the site where it is located. Viewed in the light most favorable to the verdict, the evidence is legally sufficient to establish that the appellant knew that the habitation was "located on property belonging to another." Tex. Pen. Code § 28.02(a)(2)(D).

c. <u>The evidence is legally sufficient to establish that the appellant was reckless as to whether the burning would endanger life or property</u>

As was pointed out above, the hypothetically correct jury charge would authorize a conviction if, *inter alia*, the appellant acted with recklessness about whether the burning or explosion would "endanger the life of some individual or the safety of the property of another." Tex. Pen. Code § 28.02(a)(2) (F).

i. <u>Typographical error</u>

Here, the appellant argues that the evidence is insufficient to satisfy that requirement. Referring to a typographical error in the jury charge, the appellant correctly observes that the application paragraph authorized a conviction if the jury found, *inter alia*, that "Shriya Biman Patel was reckless in so doing by consciously disregarding the risk that the fire would endanger the life of <u>Biman Patel</u>." CR 126, π VI; *see* App. Br. 16-17. The underlined name differs, by one letter, from the correct spelling of the name of the victim, i.e., Bimal Patel.

The appellant acknowledges in her brief that "the name of the victim is not typically considered an essential element of the offense." App. Br. 16, citing *Fuller*, 73 S.W.3d 250, 254. *See Byrd v. State*, 336 S.W.3d 242, 252-53 (Tex. Crim. App. 2011) ("it is the identity of the person, not his formal name, that controls and guides the sufficiency of the evidence review"). The appellant also concedes, "Typographical errors are also ignored if they do not deprive the accused

34

of notice or authorize conviction on a basis not included in the indictment." App. Br. 16, citing *Gore v. State*, 332 S.W.3d 669, 673 (Tex. App.—Eastland 2010).

Despite making those concessions, the appellant still argues that the reference to "Biman Patel" is significant. The essence of the appellant's argument appears to be that the phrase "the life of Biman Patel" refers to the life of *the appellant*, i.e., Shriya Biman Patel, not the life of the victim. *See* App. Br. 17 ("Thus, both the statute and the charge authorized conviction if she was reckless in endangering her own, 'Biman Patel's,' life.").

Contrary to the appellant's argument, the application paragraph did not in fact authorize a conviction upon a finding that the appellant endangered her own life. A careful review of the application paragraph reveals the flaw in that argument. Specifically, there are two instances in Paragraph VI where the name "Biman Patel" appears without being immediately preceded by the name "Shriya." The appellant relies solely upon the first instance. *See* CR 126, π VI (requiring finding that "Shriya Biman Patel was reckless in so doing by consciously disregarding the risk that the fire would endanger the life of <u>Biman Patel</u>"). The appellant's argument makes no mention of the second instance. *See* CR 126, π VI (requiring finding that "the said Shriya Biman Patel by reason of the commission of said offense did thereby cause death to be suffered by <u>Biman Patel</u>").

35

Simply put, no juror could rationally have found that the appellant caused *her own* death in this case. Thus, it is clear that, in the second place where the name "Biman Patel" appears without being immediately preceded by the name "Shriya," the jury construed the name "Biman Patel" to be a reference to the victim, not a reference to the appellant. A jury construing the name "Biman Patel" to mean the victim in one place in the application paragraph could not rationally have construed that same name to mean the appellant elsewhere in that application paragraph.

Moreover, to the extent that the appellant's claim is predicated upon this typographical error, that claim has been waived by the appellant's failure to raise the issue at trial. "'Questions involving the rule of *idem sonans* must be raised in the first instance at trial. If the issue is raised for the first time on appeal, it will be treated as having been waived and will present nothing for review.'" *In re B.P.S.*, No. 03-07-00284-CV, 2008 Tex. App. LEXIS 6028 at *12-*13 (Tex. App.—Austin Aug. 6, 2008), quoting *Martin v. State*, 541 S.W.2d 605, 608 (Tex. Crim. App. 1976). Accordingly, this Court should find that the appellant has not provided any justification for departing from the well-settled ruled that "[t]he victim's name is not a statutory element of the offense" and therefore is not included in the hypothetically correct jury charge. *Fuller*, 73 S.W.3d 250, 254.

ii. Evidence of the appellant's recklessness

Returning to the issue of sufficiency, there can be no real question that the appellant acted with recklessness about whether the burning or explosion would "endanger the life of some individual or the safety of the property of another." Tex. Pen. Code § 28.02(a)(2)(F). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code § 6.03(c). Indeed, the appellant's conduct suggests a mental state that actually went beyond mere recklessness. "It is both a common-sense inference and an appellate presumption that a person *intends* the natural consequences of his acts." *Ex parte Thompson*, 179 S.W.3d 549, 556 n18 (emphasis added).

In light of the APD officer's testimony that Bimal indicated that both he and the appellant "went in there" (8 RR 71) and that the appellant had "kind of tricked" Bimal to some extent (8 RR 72), the evidence is clearly sufficient to establish that the appellant was aware that Bimal was in the bathroom. Moreover, the

37

appellant's conduct in tampering with the fire-protection equipment reflects her awareness of the obvious risk that her conduct would result in a fire and/or an explosion and that the Bimal's life (and also her own life) would be endangered thereby. Viewed in the requisite light, the evidence is also sufficient to establish that she was reckless about whether the fire would "endanger the life of some individual," i.e., the life of Bimal Patel (and the appellant's life as well). Tex. Pen. Code § 28.02(a)(2) (F). The evidence also supports a finding that the appellant was reckless about whether the fire would "endanger … the safety of the property of another," i.e., the safety of the apartment building or the safety of the property of one or more other tenants. *Id.*

6. The evidence is legally sufficient to support a conviction under Penal Code section 28.02(a-2)

Penal Code section 28.02 defines the offense of arson in multiple ways. *See* Tex. Pen. Code § 28.02(a), (a-1), and (a-2). The foregoing discussion addressed the sufficiency of the evidence to support a conviction for arson under the definition set forth in section 28.02(a). Also significant here is the definition contained in section 28.02(a-2), which provides as follows:

38

§ 28.02. Arson

\*\*\*

(a-2) A person commits an offense if the person intentionally starts a fire or causes an explosion and in so doing:

   (1) recklessly damages or destroys a building belonging to another; or

   (2) recklessly causes another person to suffer bodily injury or death.

Tex. Penal Code § 28.02(a-2).

Significantly, the hypothetically correct jury charge would authorize an arson conviction under Penal Code section 28.02(a-2) even though that particular theory was not addressed in the jury charge.[5] *See Swartz*, 61 S.W.3d 781, 786 ("when an indictment has been presented that authorizes conviction on a particular ground and facts have been presented to a jury that are sufficient to convict on that ground, it is not necessary that the jury charge itself have specifically stated that ground in order for a conviction to be affirmed").

Viewed in the light most favorable to the verdict, the evidence is sufficient to prove the appellant's guilt in two different ways under section 28.02(a-2). First, for all of the reasons explained above, the jury could reasonably have found that

---

[5] In light of the allegations set forth in Count I of the indictment, an offense under section 28.02(a-2) constitutes a lesser-included offense. *See* CR 5. "An offense is a lesser-included offense of another offense … if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Watson*, 306 S.W.3d 259, 273.

the appellant "intentionally start[ed] a fire or cause[d] an explosion and in so doing … (1) recklessly damage[d] … a building belonging to another." Tex. Penal Code § 28.02(a-2)(1). Regarding the element of recklessness, the appellant's conduct suggests a mental state that actually went beyond mere recklessness. As was pointed out above, "[i]t is both a common-sense inference and an appellate presumption that a person *intends* the natural consequences of his acts." *Thompson*, 179 S.W.3d 549, 556 n18 (emphasis added).

It should be noted that the section 28.02(a-2)(1) does not contain the knowledge element that appears in section 28.02(a)(2)(D), which requires, *inter alia*, proof that the appellant committed the act while "knowing that it [i.e., the habitation] is located on property belonging to another." Tex. Pen. Code sec. 28.02(a)(2)(D). Section 28.02(a-2)(1) merely requires proof of the fact that the building belonged to another, not proof that the defendant knew that fact.

In this case, the jury received a copy of the lease agreement between the Bimal and the owner of the Camden Huntingdon Community, by and through its managing agent, Camden Development, Inc. *See* State's Exh. 163; 8 RR 142-43. Viewed in the requisite light, that lease, coupled with all of the evidence described above, supports the conclusion that the appellant "intentionally start[ed] a fire" and

in so doing "recklessly damage[d] … a building belonging to the owner of the apartment complex. Tex. Penal Code § 28.02(a-2)(1).

The second (and more obvious) way that the evidence is legally sufficient to prove the appellant's guilt under section 28.02(a-2) is that it established that the appellant "intentionally start[ed] a fire or cause[d] an explosion and in so doing … (2) recklessly cause[d] another person to suffer bodily injury or death." Tex. Penal Code § 28.02(a-2)(2). Thus, regardless of whether this Court finds the evidence sufficient under section 28.02(a), it seems clear that the evidence was sufficient to satisfy the requirements of section 28.02(a-2)(1) as well as those of section 28.02(a-2)(2).

7. The evidence is legally sufficient to support a conviction under the law of parties

Under the law of parties, a person is criminally responsible for the conduct of another if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." Tex. Penal Code § 7.02(a)(2); *see also id*. § 7.01(a). The hypothetically correct jury charge would also include the law of parties, even though it was not alleged in the indictment and was not included in the jury charge. *See Marable v. State*, 85 S.W.3d 287, 288 (Tex. Crim. App. 2002) (holding that the law of parties need not be pled in the indictment); *Anderson*, 416 S.W.3d 884, 889

41

(holding that hypothetically correct jury charge would have included the conspiracy theory of the law of parties even though that theory was not set forth in the application paragraph).

As is explained below in the State's reply to the appellant's second point of error (which reply is incorporated herein by reference), the evidence is legally sufficient, under the law of parties, to support the appellant's conviction. In short, the evidence is sufficient to support an inference that, if Bimal started the fire, the appellant acted with intent to assist him in the commission of the offense of arson and did in fact assist him in committing that offense. This is true regardless of whether the offense fell within the definition set forth in Penal Code section 28.02(a)(2) or, alternatively, within the definition set forth in section 28.02(a-2).

For all of the foregoing reasons, this Court should overrule the first point of error.

**THE STATE'S REPLY TO THE SECOND POINT OF ERROR**

THE TRIAL COURT DID NOT ERR BY INSTRUCTING THE JURY ON THE LAW OF PARTIES, AND ANY ERROR WAS HARMLESS.

Argument and Authorities

In her second point of error, the appellant asserts, "Because there was no evidence showing appellant acted as a party to the offense it was error to include a charge on the law of parties that enlarged her criminal responsibility." App. Br. 18. That claim should be overruled.

1. The law of parties

As was pointed out above, a person is criminally responsible, under the law of parties, if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." Tex. Penal Code § 7.02(a)(2); *see also id*. § 7.01(a); *see generally Miller v. State*, 83 S.W.3d 308, 313-14 (Tex. App.—Austin 2002). "[I]t is well-settled that the law of parties need not be pled in the indictment." *Marable*, 85 S.W.3d 287, 288.

2. Background

In the case at bar, the State asked the trial court to instruct the jury on the law of parties in relation to the lesser included offense of arson. 9 RR 66, 68. The prosecutor indicated that the requested charge related only to the offense of arson.

43

9 RR 68. In addition, the prosecutor explained that the State's theory of the party liability: "MR. YOUNG: So that the idea being that somebody started this idea of, you know, burning -- setting this fire. It was either Shriya Patel, or it was Bimal Patel, and she acted as a party in helping him out, buying the stuff and actually throwing the gas." *Id.*

Defense counsel objected to the State's request for a parties instruction. 9 RR 66, 69. Such an instruction was included in the trial court's proposed jury charge as Paragraph IV. Defense counsel objected to that particular instruction. 9 RR 74-75. An instruction on the law of parties was included in the final version of the jury charge as Paragraph IV. *See* CR 126, π IV. The application paragraph relating to the offense of arson made no reference to the law of parties. *See id.*, π IV.

3. Instructing the jury on the law of parties

"In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). This is true even where there is "strong" evidence to support a conviction of a defendant under the theory that she was the principal actor. *Ryser v. State*, No. 01-13-00634-CR, ___ S.W.3d ___, 2014 Tex. App.

44

LEXIS 12711 at *13 (Tex. App.—Houston [1st Dist.] Nov. 25, 2014). "[S]o long as there also is evidence that would support the alternate theory that he acted as a party to the offense, the prosecution may submit both theories and the trial court may include a jury instruction on the law of parties." *Id*.

4. Standard governing appellate review

Claims of jury charge error are reviewed under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). Under that standard, the appellate court must first determine whether error exists. If error exists, the court must then evaluate the harm caused by the error. The degree of harm required for reversal depends on whether that error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." By contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Id*. The *Almanza* analysis is fact specific and is done on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

5. <u>The trial court did not err by instructing the jury on the law of parties</u>

"In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd*, 3 S.W.3d 547, 564. In the instant case, the trial court did not err because the evidence is legally sufficient to support a verdict that the appellant is guilty as a party to offense of arson as defined by Penal Code section 28.02(a)(2) and also as defined by section 28.02(a-2).

a. <u>The evidence is sufficient to support the alternative inference that the victim started the fire</u>

When the defendant is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Miller*, 83 S.W.3d 308, 313. The essence of the appellant's argument appears to be that the appellant could not be guilty as a party because "there is no evidence that Bimal Patel took any part in setting the fire." App. Br. 20.

The appellant's argument is flawed because the evidence in this case supports the inference that, if the appellant played no role in starting the fire, then the fire could only have been ignited by Bimal. Viewed in the light most favorable to the trial court's ruling (i.e., the overruling of the appellant's objection to the

46

challenged instruction), the evidence supports the inference that the fire in the apartment could only have been ignited by the appellant, by the victim, or by both of those individuals. Stated differently, the evidence supports an inference (referred to herein as "the alternative inference) that, if the appellant did not cause the fire to ignite, then the fire was started by Bimal.[6]

Viewed in the proper light, the evidence also supports an inference that Bimal was not completely content with his circumstances. Bimal came from a wealthy family. 6 RR 202. His father was a very wealthy motel owner in the Amarillo area. 7 RR 27. His father, the first person in Bimal's family to move to the United States, was considered "[a]n elder of sorts" because he was responsible for bringing other Patels to this country. 7 RR 27; *see id*. at 26-27. Most of the male members of Bimal's family were "very successful in terms of financial, owning large major hotels, that kind of thing." 7 RR 27. The appellant also came from a family of means in India. There, her family had servants. 7 RR 28.

Bimal, in contrast, worked for a company doing "almost like a telemarketing thing," and his financial situation was only "meager … at best." 6 RR 202.

---

[6] For the reasons explained above in the State's reply to the appellant's first point of error, the State disputes the appellant's claim that the evidence is legally insufficient to support the appellant's conviction as the principal actor.

47

It was also suggested that the marriage between Bimal and the appellant was somehow rendered problematic by virtue of the fact it was an arranged marriage. There was testimony that Bimal and the appellant came from a "pretty conservative part of India" and that "it is seen as an awful thing to happen to you to not to be married." 9 RR 18, 29. The jury heard testimony that Bimal had received some pressure from his family to get married, that he was initially reluctant to enter into an arranged marriage, but that he did eventually enter into an arranged marriage with the appellant. 7 RR 13-14, 18-20.

The jury also received testimony that, prior to the wedding, the appellant told Bimal's friend Chelsea Schwierking that the appellant had lost her virginity to another man and that the appellant hoped that her marriage to Bimal would cause the other man to "get jealous and want her back and come after her." 7 RR 90. The other man did not come after her. *Id.*

The evidence also included testimony that Bimal was "anxious" in February 2012, which was about two months before the fire occurred. 7 RR 18. In addition, the jury received a stipulation as to the contents of a text message that Bimal sent to someone on February 17th, 2012. That text message from Bimal included the following statements:

> … My dad had surgery yesterday on his good eye and it didn't go so
> well, so he's back in there now and I have to handle all the paperwork

48

for the two hotels in Amarillo and get the documents prepared, mailed to my wife for immigration interview which is in two weeks. I got a letter from the IRS today for a problem on my 2008 tax return and I still have two meetings tomorrow on top of everything else. So I really need to take the night off…. I'm fine. <u>But at the same time I feel like I'm about to snap</u>. Not bad, but more so like a super bent tree branch with a lot of weight on it….

9 RR 62-63 (emphasis added).

Significantly, the argument asserted by the appellant on appeal (i.e., that "there is no evidence that Bimal Patel took any part in setting the fire") is wholly inconsistent with the position advanced by defense counsel at trial. For example, one of the defense attorneys, Mr. Sawyer, expressly asserted during his opening statement that Bimal Patel committed suicide:

He climbed into that tub to inflict great pain on his wife, who didn't know him, one of the other people that he believed failed him. I cannot imagine laying awake late at night. But I think if you listen to all the testimony, consider all the evidence and use your common sense, you will discover <u>an unhappy man who chose to leave this life in the most hideous fashion imaginable</u> and still reach out and blame someone else. <u>Because he killed himself</u>.

6 RR 119-20 (emphasis added).[7]

---

[7] During that same opening statement, Mr. Sawyer suggested that there was some connection between Bimal Patel's cultural heritage and the use of fire during the incident:

Fire is very important in the Hindu religion. For example, all Hindus are cremated at the end of their lives. In a marriage, there is a fire. The bride and the groom join hands, and they march around that fire seven times….

The defense team's claim of suicide did not end with Mr. Sawyer's comments during the opening statements. During closing argument, the other defense attorney, Ms. Wood, specifically asserted that Bimal had "doused himself" with gasoline and that he was alone in the bathroom when the fire ignited:

> He [i.e., Bimal Patel] doused himself. The boxer shorts. Remember those had gas on it, but they're outside the bathroom. Isn't that consistent with a man who is manipulating that gas himself? He's pouring the gas. Some of it spills. He takes the cloth. He wipes it up. Some of it is on his hands. He wipes his boxers. Takes his shorts off. We know -- we know that they're not a part of the -- anything that happened in the bathroom because they're outside and they're unburnt. So the gas got on it before he went in there. Took the shorts off on the outside. He got into the tub, doused himself, and then he asked his wife to take that white bucket outside, close the door.
>
> And after that, we really don't know what happened. Other than the ignition is in there. The lighter is in there. The candles are in there. And the door is closed.

9 RR 108 (emphasis added).

Earlier during that same closing argument, Ms. Wood made the following declaration:

> MS. WOOD: Ladies and gentlemen, Shriya Patel is guilty beyond a reasonable doubt of assisting in the suicide of her husband. That's what this evidence has shown you this week….

9 RR 96 (emphasis added). By making this argument, Ms. Wood conceded the sufficiency of the evidence to prove at least two things: (1) that Bimal intentionally

---

6 RR 114. During the trial, an expert witness testified that, in India, all deceased individuals are cremated and that "there is some history or feeling of death by burning in India." 9 RR 53.

caused the fire for the purpose of killing himself, and (2) that the appellant assisted him in doing so.

These assertions by the appellant's trial attorneys stand in stark contrast to the appellant's claim on appeal that "there is no evidence that Bimal Patel took any part in setting the fire" (App. Br. 20) and that "[n]o evidence showed appellant assisted anyone to commit the offense" (*id.* at xvi).[8]

After considering all of the evidence in the requisite light, the reasonable inferences from that evidence, and the closing arguments of defense counsel, this Court should conclude that the trial court could reasonably have found the evidence to be sufficient to support the alternative inference that Bimal was the person who started the fire. Stated different, the trial court properly permitted the jury to reject the notion, asserted by the appellant on appeal, that neither one of those individuals "took any part in setting the fire." App. Br. 20.

---

[8] The appellant should be estopped from presenting the instant claim of charge error because it is based upon assertions that are the polar opposite of the assertions made by defense counsel at trial. *See State v. Stewart*, 282 S.W.3d 729, 739-740 (Tex. App.—Austin 2009) ("A party may be estopped from asserting a claim on appeal that is inconsistent with that party's prior conduct"), citing *Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003).

b. The trial court could reasonably have found that the evidence was sufficient to support an inference that the victim committed arson as defined by Penal Code section 28.02(a)(2)

In light of the reasonable, alternative inference that Bimal started the fire (addressed above), the trial court could reasonably have found the evidence sufficient to support an inference that Bimal, by doing so, committed the offense of arson as defined by Penal Code section 28.02(a)(2). That statute provides, in pertinent part, as follows:

§ 28.02. Arson
(a) A person commits an offense if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage:
    ***
    (2) any building, habitation, or vehicle:
      (A) knowing that it is within the limits of an incorporated city or town;
          ***
      (D) knowing that it is located on property belonging to another;
          *** or
      (F) when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

Tex. Pen. Code § 28.02(a)(2)(A), (D), and (F).

Regarding the issue of intent, the trial court could reasonably have found the evidence sufficient to establish that, if Bimal did start the fire, he did so with intent to damage the apartment. Viewed in the light most favorable to the trial court's ruling, the evidence that Bimal had been "anxious" (7 RR 18) and "about to snap"

52

(7 RR 62-63) supports the inference that, if Bimal did start the fire, he did so with a conscious objective or desire to cause the resulting damage to the habitation. *See* Tex. Penal Code sec. 6.03(a). Such damage was the natural consequence of that conduct. "It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts." *Thompson*, 179 S.W.3d 549, 556 n18.

Regarding the *mens rea* required by section 28.02(a)(2), the trial court could reasonably have found the evidence sufficient to establish that, if Bimal did start the fire, he was, at the very least, reckless about whether the fire would "endanger the life of some individual" (i.e., his own life or the life of the appellant) and also reckless about whether the fire would "endanger … the safety of the property of another" (i.e., the safety of the apartment building or the safety of the property of one or more other tenants). Tex. Pen. Code § 28.02(a)(2) (F). In this regard, the admission into evidence of Bimal's lease agreement (State's Exh. 163) and the apartment owner's ledger of payments received from Bimal (Def. Exh. 23) support a finding that Bimal knew that the apartment building was "the property of another." *Id.* That evidence likewise supports an inference that Bimal knew that the habitation was " located on property belonging to another." *Id*., § 28.02(a)(2) (D).

Accordingly, this Court should conclude that the trial court could reasonably have found the evidence to be sufficient to support an inference that, if the appellant played no role in igniting the fire, Bimal committed the offense of arson as defined by Penal Code section 28.02(a)(2).

      c. <u>The trial court could reasonably have found that the evidence was sufficient to support an inference that the victim committed arson as defined by Penal Code section 28.02(a-2)</u>

In light of the reasonable, alternative inference that Bimal started the fire, the trial court could reasonably have found the evidence to be sufficient to support an inference that Bimal thereby committed the offense of arson  as defined by Penal Code section 28.02(a-2), which provides, in pertinent part, as follows:

§ 28.02.  Arson
\*\*\*
(a-2) A person commits an offense if the person intentionally starts a fire or causes an explosion and in so doing:
  (1) recklessly damages or destroys a building belonging to another; or
  (2) recklessly causes another person to suffer bodily injury or death.

Tex. Penal Code § 28.02(a-2).

Viewed in the light most favorable to the trial court's ruling, the evidence is sufficient to establish that, if Bimal started the fire, he acted "intentionally" when doing so.  *Id*.  "A person acts intentionally with respect to the nature of his conduct … when it is his conscious objective or desire to engage in the conduct."  Tex. Pen.

54

Code § 6.03(a). Here, the jury received evidence that gasoline, candles, and a lighter were in the bathroom with Bimal when the fire ignited. 7 RR 72, 232. The trial judge could reasonably have concluded, in light of the evidence that Bimal had been "anxious" (7 RR 18) and "about to snap" (7 RR 62-63), that there was circumstantial evidence sufficient to support an inference that, if Bimal started the fire, he did so with a "conscious objective or desire to engage in the conduct."

Regarding the remaining elements of section 28.02(a-2), there should be no question that the evidence is sufficient to establish that, if Bimal started the fire, he thereby recklessly (or perhaps even intentionally or knowingly) caused his own bodily injury and death. *See* Tex. Penal Code § 28.02(a-2)(2). If he started the fire, he also recklessly damaged a building belonging to another (i.e., the owner of the Camden Huntingdon Community). *See id.*, § 28.02(a-2)(1).

Thus, this Court should conclude that the trial court could reasonably have found the evidence to be sufficient to support an inference that, if the appellant played no role in igniting the fire, Bimal committed the offense of arson as defined by Penal Code section 28.02(a-2).

d. <u>The trial court could reasonably have concluded that the evidence was sufficient to support a verdict that the appellant was guilty as a party</u>

Under the law of parties, a person is criminally responsible for the conduct of another if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." Tex. Penal Code § 7.02(a)(2). In this case, the trial court could reasonably have found the evidence to be sufficient to support an inference that, if Bimal did start the fire, the appellant acted with intent to assist Bimal in the commission of the offense of arson and did in fact assist him in committing that offense. This is true regardless of whether the offense of arson fell within the definition set forth in Penal Code section 28.02(a)(2) or, alternatively, within the definition set forth in section 28.02(a-2).

Viewed in the light most favorable to the trial court's ruling, the evidence is sufficient to support an inference that the appellant actively participated in the commission of the offense. It was undisputed at trial that the appellant purchased the tape that was used to cover the sprinklers as well as the gasoline that started the fire. For example, defense counsel made the following assertion during opening statements:

> … Shriya Patel did go to a Wal-Mart and buy the instruments that
> were used to cover the sprinklers, the smoke detector, that she bought

56

> gasoline. You're also going to hear her explanation of why. And it's simple. Because Bimal told her to do it.

6 RR 118; *see also* 9 RR 102 (where defense counsel stated, during closing argument, "They obviously proved to you beyond a reasonable doubt that she bought the items, okay.").

In addition, the evidence suggested that the appellant, on the day of the incident, played an active role in the disabling of the fire-protection equipment in the apartment. The appellant's fingerprints were found on the items (contained State's Exh. 143, also referred to as Item 24) that were used to cover the sprinkler heads. 8 RR 130-37; *see id.* at 119. Her fingerprint was even found on the adhesive side of a piece of tape (described as Item 45.32 of Lab Item 24) that had been used to cover a sprinkler. *See* 8 RR 135. The jury could reasonably have inferred that the appellant would have touched the adhesive side of the tape only when using it to cover the sprinkler, not during the process of purchasing the tape and transporting it to the apartment.

This evidence that the appellant was personally involved in the act of disabling the fire-suppression equipment supports a reasonable inference that the appellant anticipated that a fire would occur and intended to prevent the suppression of that fire. The trial court could reasonably have found that the

evidence sufficient to establish that she was "acting with intent to promote or assist the commission of the offense. . . ." Tex. Penal Code § 7.02(a)(2).

Considering the evidence as a whole, including evidence that the appellant purchased the accelerant, covered the sprinklers, and disabled the smoke detector, the trial court could reasonably have concluded that, if the jury found the evidence insufficient to establish that the appellant actually ignited the fire, then the jury had a rational basis for finding the appellant guilty of arson under the law of parties. Accordingly, this Court should conclude that the trial court did not err. *See Ladd*, 3 S.W.3d 547, 564.

6. <u>Any error was harmless because the evidence clearly supports the appellant's conviction as the principal actor</u>

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error." *Almanza*, 686 S.W.2d 157, 171 (op. on reh'g) (emphasis in original, quoting Tex. Code Crim. Proc. Ann. art. 36.19). This analysis requires a reviewing court to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). In order for reversal to be warranted, the reviewing court must "find that the

58

defendant 'suffered some actual, rather than merely theoretical, harm from the error.'" *Id.*, quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

It is well settled that, "[i]f the evidence clearly supports a jury finding that [the appellant] is guilty as the principal actor, any error in charging on the law of parties is harmless." *Vogt v. State*, 421 S.W.3d 233, 242 (Tex. App.—San Antonio 2013) (citing *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999); *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986); *Brown v. State*, 716 S.W.2d 939, 945-46 (Tex. Crim. App. 1986); and *Ladd*, 3 S.W.3d 547, 564-65).

As was explained above in the State's reply to the appellant's first point of error, the evidence is legally sufficient to support the appellant's conviction, as a principle, for the lesser included offense of arson.[9] Thus, if the trial court did err by instructing the jury on the law of parties, any error was harmless.

The appellant quotes the *Ladd* ruling as support for the proposition that this rule applies only "when '…the jury almost certainly did not rely upon the parties instruction in arriving at its verdict.'" App. Br. 22, quoting *Ladd*, 3 S.W.3d at 565. However, the appellant appears to confuse the *Ladd* court's analytical conclusions with the standard that was applied in that case. In *Ladd*, the court held that the trial

---

[9] The State's reply to the appellant's first point of error is incorporated herein by reference.

court erred in submitting the parties instruction. The following excerpt from the

*Ladd* opinion contains the full text of court's harm analysis:

> Nevertheless, "where [as in the instant case] the evidence clearly
> supports a defendant's guilt as a principal actor, any error of the trial
> court in charging on the law of parties is harmless." *Black v. State*,
> 723 S.W.2d 674, 675 (Tex. Crim. App. 1986). In other words, because
> there was no evidence tending to show appellant's guilt as a party, the
> jury almost certainly did not rely upon the parties instruction in
> arriving at its verdict, but rather based the verdict on the evidence
> tending to show appellant's guilt as a principal actor. We overrule
> point of error 67.

*Ladd*, 3 S.W.3d 547, 564-65 (emphasis added).

In the language underlined above, the *Ladd* court clearly re-affirmed the

applicable standard. The court's conclusion that "the jury almost certainly did not

rely upon the parties instruction" arises from the fact that the record in that case

was devoid of evidence that Ladd had an accomplice. *See, e.g.*, *Ladd*, 3 S.W.3d at

557 ("a rational jury could have concluded beyond a reasonable doubt that …

appellant entered Garner's home, sexually assaulted her and then intentionally

killed her, stole her property, and then set fire to her home in an attempt to hide his

culpability").

But the rule at issue applies not only in cases like *Ladd* (where there is "no

evidence" of involvement as a party), but also in cases where there is ample

evidence of the defendant's guilt as a party. For example, in *Brown*, the record

60

reflected the involvement of three perpetrators, each of whom played an active role in robbing the victim. *See Brown*, 716 S.W.2d 939, 940 (Tex. Crim. App. 1986). Despite defendant Brown's active involvement as a party, the court in *Brown* held, "Appellant's conduct alone is sufficient to sustain the conviction, and the claimed error in the charge, if any, is harmless." *Id*. at 946. *See also Black*, 723 S.W.2d 674 (error in giving parties charge was harmless despite evidence that defendant and two other individuals were together in a motor home that transported 78 pounds of PCP from Los Angeles to Dallas).

In short, nothing in the *Ladd* opinion suggests that the Court of Criminal Appeals intended to graft onto the existing rule a requirement that the appellate court find that "the jury almost certainly did not rely upon the parties instruction in arriving at its verdict."[10] App. Br. 22.

Moreover, it must be presumed that the challenged instruction was correctly applied by the jury in this case. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented"); *Kirsch v. State*, 306 S.W.3d 738, 748 n33 (Tex. Crim. App. 2010). That instruction provided as follows:

---

[10] Such a finding, in many cases, would be largely speculative. As was pointed out above, speculation is discouraged in the context of an *Almanza* harm analysis. *See Reeves*, 420 S.W.3d 812, 816 (in order for reversal to be warranted, the reviewing court must "find that the defendant 'suffered some actual, rather than merely theoretical, harm from the error'").

IV.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense <u>committed by another</u> if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

CR 126, π IV (emphasis added).[11]

If the evidence was indeed insufficient to support a finding that the offense of arson "was committed by another," then the jury could not rationally have concluded, pursuant that instruction, that the appellant was guilty as a party.

For all of the reasons stated above, the appellant's second point of error should be overruled.

---

[11] The jury charge addresses the law of parties only in the abstract. *See* CR 126, Para. IV. The application paragraph contains no reference to the law of parties. *See id.*, Para. VI.

## PRAYER

WHEREFORE, the State requests that the Court overrule both of the appellant's points of error and affirm the judgment of the trial court.

Respectfully submitted,

Rosemary Lehmberg
District Attorney
Travis County, Texas


*/s/ M. Scott Taliaferro*
M. Scott Taliaferro
Texas Bar No. 00785584
Assistant District Attorney
District Attorney's Office
P.O. Box 1748
Austin, Texas  78767
Phone: 512.854.3626   Fax: 512.854.4810
Email:  scott.taliaferro@traviscountytx.gov
    and AppellateTCDA@traviscountytx.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based on the computer program used to generate this brief, that this brief contains 14,293 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count. I certify, further, that this brief is printed in a conventional, 14-point typeface except for footnotes, any and all of which are printed in a conventional, 12-point typeface.

*/s/ M. Scott Taliaferro*
M. Scott Taliaferro

## CERTIFICATE OF SERVICE

I hereby certify that, on this 9th day of March, 2015, a copy of the foregoing State's brief was sent, via U.S. mail, email, facsimile, or electronically through the electronic filing manager, to the following attorney for the appellant:

Ken Mahaffey, Esq.
P.O. Box 684585
Austin, TX 78768
Fax No.: (512) 444-6557
Email: Ken_Mahaffey@yahoo.com

*/s/ M. Scott Taliaferro*
M. Scott Taliaferro